1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   STEVEN A. MARTIN,

11          Plaintiff,                    No. 2:10-cv-0189 WBS DAD P

12      vs.

13   A. MASURET, et al.,                  ORDER AND

14          Defendants.                   FINDINGS & RECOMMENDATIONS

15   _____/

16          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  This action is proceeding on plaintiff's second amended complaint (SAC),

18   filed July 26, 2010.  (ECF No. 10.)  Therein, plaintiff alleges that defendant D. Hamad violated

19   plaintiff's constitutional rights by retaliating against him for naming her as a defendant in another

20   lawsuit that he had filed against her.  Specifically, plaintiff alleges that defendant Hamad

21   retaliated against him by falsifying information against plaintiff, which caused him to be

22   transferred to another prison.  This matter is before the court on defendant's motion for summary

23   judgment.[1]

24   _____

25          [1] Defendants filed their motion for summary judgment (MSJ) on August 16, 2012.  (ECF
     No. 47.)  On September 17, 2012, plaintiff filed a motion for extension of time to file an
26   opposition to that motion (ECF No. 48), which was granted by order filed September 27, 2012

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary

---

(ECF No. 50). Subsequently the court denied a motion filed by plaintiff pursuant to Rule 56(d) of the Federal Rules of Civil Procedure and granted plaintiff a final twenty-one day extension of time in which to file his opposition to the defendant's motion for summary judgment. (ECF No. 65). That order was affirmed by the assigned District Judge in an order filed February 22, 2013. (ECF No. 67.) By order filed the same day (ECF No. 68), this court granted plaintiff until March 1, 2013 to place his opposition to the motion for summary judgment in the mail. Plaintiff did not timely file an opposition and, on March 13, 2013, this court issued findings and recommendations recommending that the action be dismissed pursuant to Fed. R. Civ. P. 41(b) (ECF No. 71). On March 15, 2013, plaintiff's opposition to the motion for summary judgment was finally docketed in this action. (ECF No. 72.) On March 26, 2013, defendant Hamad filed a reply brief. (ECF No. 73). On April 4, 2013, plaintiff filed objections to the March 13, 2013 findings and recommendations. (ECF No. 74.) Good cause appearing, the March 13, 2013 findings and recommendations will be vacated and the court will issue these findings and recommendations addressing the merits of defendant's motion for summary judgment.

1  judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

2         If the moving party meets its initial responsibility, the burden then shifts to the

3  opposing party to establish that a genuine issue as to any material fact actually does exist. See

4  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

5  establish the existence of this factual dispute, the opposing party may not rely upon the

6  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

7  form of affidavits, and/or admissible discovery material, in support of its contention that the

8  dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

9  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

10  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

11  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

12  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

13  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

14  1436 (9th Cir. 1987).

15         In the endeavor to establish the existence of a factual dispute, the opposing party

16  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

17  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

18  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

19  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

20  genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

21  committee's note on 1963 amendments).

22         In resolving the summary judgment motion, the court examines the pleadings,

23  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

24  any. Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed. See Anderson,

25  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

26  court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587.

1    Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

2    produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

3    Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

4    1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

5    show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

6    as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

7    'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

8                    On September 3, 2010 and August 15, 2012, the court advised plaintiff of the

9    requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.

10   See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th

11   Cir. 1998) (en banc); and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

12                                                ANALYSIS

13   I.  Undisputed Facts

14                   At all times relevant to this action, plaintiff has been a state prisoner in the

15   custody of the California Department of Corrections and Rehabilitation (CDCR), and defendant

16   Hamad has been employed by CDCR.  Since approximately January of 2000, defendant Hamad

17   has been the Supervisor of Academic Instruction at California State Prison-Sacramento (CSP-

18   Sacramento).  (Decl. of Hamad filed Aug. 16, 2012 (ECF No. 47-7) at ¶ 1.)  On or about March

19   10, 2003, plaintiff filed a civil rights action in this court, Case No. 2:03-cv-0466 GEB JFM P.[2]

20   (Ex. A to Defendant Hamad's Request for Judicial Notice (RJN) filed Aug. 16, 2012 (ECF No.

21   47-5) at 5.)  Defendant Hamad was the only defendant served with process in that action.  (Id. at

22   7.)

23                   Case No. 2:03-cv-0466 GEB JFM P was scheduled for trial in the district court on

24   September 16, 2008.  (Id. at 17.)  On September 15, 2008, defendant Hamad was contacted by

25   _____

26        [2]  Defendant's request that the court take judicial notice of the docket in Case No. 2:03-
     cv-0466 is granted.

                                                      4

the Deputy Attorney General representing her in that action.  (Decl. of Hamad (ECF No. 47-7) at ¶ 2.)  Defendant Hamad was told that the Deputy Attorney General had made an offer to plaintiff to settle that case and that the offer had been immediately rejected.  (Id.)  The Deputy Attorney General told defendant Hamad "that [plaintiff] had a very personal case against [her] and that [plaintiff] believed he would be able to have [her] punished."  (Id.)  Plaintiff declares that he actually told the Deputy Attorney General that he would not accept any offer to settle the case and to "advise his client Hamad that if she takes the stand, that [plaintiff] was going to get her for perjury based on what all she said in her declaration under penalty of perjury."  (Decl. of Martin filed Mar. 15, 2013 (ECF No. 72) at 25.)  Plaintiff denies that he told the Deputy Attorney General that he had a "very personal case" against defendant Hamad or that he would be able to have her punished.  (Id.)

On September 16, 2008, defendant Hamad appeared for trial in Case No. 2:03-cv-0466.  (Id. at ¶ 3.)  On September 21, 2008, defendant Hamad wrote a memorandum to a lieutenant in CSP-Sacramento's Institution Services Unit.  (Id. at ¶ 6 and Ex. A.)  In the memorandum, defendant Hamad set forth the information concerning the settlement offer and rejection and her attorney's remarks to her regarding plaintiff.  (Id. at Ex. A.)  Specifically, in that memorandum defendant Hamad wrote that plaintiff had made statements during the recent court proceedings that she considered a threat against her "and designed to put pressure on the jury to find in his favor as a reward for his using the 602 process."  (Id.)  She also wrote that plaintiff had made additional statements in court, including references to telephone conversations she had with another prison employee that he could only have known about if he had spoken to that employee.  (Id.)  Defendant Hamad opined in the memorandum that plaintiff had "made threats against [her] personal safety" and she encouraged the correctional lieutenant "to consider housing [plaintiff] at another prison."  (Id.)

On September 25, 2008, plaintiff appeared before a Unit Classification Committee (UCC) at CSP-Sacramento.  (Ex. B to Decl. of Larios filed Aug. 16, 2012 (ECF No.

1   47-6).)  Based on defendant Hamad's memorandum, the UCC requested plaintiff's transfer to

2   another prison.  (Id.)  The transfer was described as a "non-adverse transfer" and plaintiff's work

3   group/privilege group, placement score and custody status remained unchanged.  (Id.)

4           Plaintiff alleges that thereafter, on November 19, 2008, he was transferred to

5   California State Prison-Corcoran (CSP-Corcoran).  (SAC at 7.)[3]  Plaintiff was subsequently

6   transferred to Centinela State Prison.  (See Ex. C to Decl. of Larios (ECF No. 47-6).)

7   II.  Disputed Facts

8           Defendant Hamad presents evidence in support of her motion for summary

9   judgment that while she was present in court for the trial in Case No. 03-cv-0466, she witnessed

10  plaintiff testify.  (Decl. of Hamad (ECF No. 47-7) at ¶ 3.)  In her declaration, defendant Hamad

11  avers that during his testimony, plaintiff Martin stated twice that he used the inmate appeal

12  process instead of violence against defendant Hamad, and that the second time he said this he

13  looked directly at her.  (Id.)  Defendant Hamad avers that she interpreted this testimony as a

14  threat to her personal safety.  (Id.)  She also avers that plaintiff Martin testified at the trial that:

15  (1) he was  a "peacemaker" among inmates on the prison yard, which Hamad interpreted as

16  implying that plaintiff had the power to direct other inmates to engage in violence; (2) Hamad

17  had planted weapons so that plaintiff would lose his prison lob; and (3) Hamad was responsible

18  for placing plaintiff in administrative segregation during an investigation into his alleged

19  overfamiliarity with staff.  (Id. at ¶ 3-4.)  Defendant Hamad also declares that plaintiff "related

20  the contents of two telephone conversations [she] had previously had with prison staff persons

21  concerning [plaintiff]" and states that plaintiff "could only known about these conversations if

22  the employees had discussed them with him, . . . ."  (Id. at 4.)  She avers that these aspects of

23  plaintiff's trial testimony caused her to conclude that plaintiff "had made threats against [her]

24

25       [3]  Plaintiff's second amended complaint is signed under penalty of perjury and therefore is
    to be considered as an affidavit on this summary judgment motion to the extent that the facts
    contained therein are based on personal knowledge and otherwise admissible.  See McElyea v.
26  Babbitt, 833 F.2d 196, 197 (9th Cir. 1987).

1   personal safety" and that "he had demonstrated an ability to manipulate staff so as to obtain

2   information of a confidential nature." Id. at 5.

3          In opposition to the pending motion for summary judgment plaintiff avers that he

4   did not testify at the trial in Case No. 2:03-cv-0466 GEB JFM P and, specifically, that he did not

5   testify in the manner described by defendant Hamad.  (Decl. of Martin filed Mar. 15, 2013 (ECF

6   No. 72) at 25-27.)[4]

7   III.  Defendant's Motion

8          Defendant seeks summary judgment on the grounds that:  (1) plaintiff did not

9   suffer any adverse action; (2) there is no evidence that the fact that defendant Hamad was a

10  defendant in Case No. 03-cv-0466 GEB JFM P was a substantial or motivating factor in her

11  decision to suggest that plaintiff be transferred to another prison; (3) there is no evidence that

12  plaintiff was chilled in the exercise of his First Amendment rights; (4) her actions advanced a

13  legitimate penological goal; and (5) she is entitled to qualified immunity.[5]

14         It is well-established that prison inmates have a constitutional right to freedom

15  from retaliation for engaging in activity protected by the First Amendment, including pursuing

16  "'civil rights litigation in the courts.'"  Rhodes v. Robinson, 408 F.3d 559, 566 (9th Cir. 2005)

17  (quoting Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995)).  A prisoner retaliation claim

18  has five elements.  First, plaintiff must show that he engaged in conduct protected by the First

19

20         [4] In defendant's reply counsel addresses this dispute as to whether plaintiff testified at
    trial only by contending that it is irrelevant whether plaintiff made statements that defendant
21  Hamad found threatening in testimony or during legal argument.  The undersigned notes that the
    minutes of the trial proceedings indicate that although closing arguments were presented,
22  plaintiff did not testify.  (See Case No. 03-cv-0466 GEB JFM P, ECF No. 123.)

23         [5] To the extent defendant Hamad argues her entitlement to summary judgment from an
    alleged failure by plaintiff to timely respond to requests for admissions, (see Def. Ps&As in
24  Supp. of MSJ filed Aug. 16, 2012 (ECF No. 47-2) at 7), defendants have not met their burden of
    demonstrating that plaintiff failed to timely respond to requests for admissions after his time to
25  do so was extended.  (See Order filed May 26, 2011 (ECF No. 32) (construing plaintiff's motion
    for an extension of time as a motion to withdraw any matters deemed admitted by lapse of time,
26  granting motion, and granting plaintiff an additional thirty days to respond to the requests for
    admissions).

1   Amendment.  See Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012).  Second, "plaintiff

2   must claim that the defendant took adverse action against the plaintiff."  Id. (citing Rhodes, 408

3   F.3d at 567.)  "The adverse action need not be an independent constitutional violation."  Id.

4   (citing Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).  Third, plaintiff must show a causal

5   connection between the protected conduct and the adverse action.  Id.  Fourth, the plaintiff must

6   prove either a chilling effect on the exercise of First Amendment rights or some other harm.  Id.[6]

7   Finally, plaintiff must show that the retaliatory action "'did not advance legitimate goals of the

8   correctional institution.'"  Id. (quoting Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985)).

9   IV.  Application of Legal Standards to Evidence Before the Court on Summary Judgment

10              Plaintiff's pursuit of the earlier filed civil rights action against defendant Hamad,

11  Case No. 03-cv-0466, was protected by the First Amendment.  See Rhodes, 408 F.3d at 567 ("Of

12  fundamental import to prisoners are their First Amendment right[s] to file prison grievances . . .

13  [and to] pursue civil rights litigation in the courts.")  Moreover, there is no dispute that the

14  actions taken against plaintiff were triggered by events that occurred in court during his

15  prosecution of that civil action.

16              The motion now before the court in this case raises four questions:  First, whether

17  plaintiff's litigation activity against defendant Hamad was a "'substantial' or 'motivating' factor"

18  behind her conduct," Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting Sorrano's

19  Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)); second, whether the actions taken

20  by defendant Hamad in writing the memorandum and requesting that plaintiff be considered for

21  transfer to another prison were "adverse;" third, whether plaintiff suffered any cognizable harm;

22

23         [6] In the context of analyzing pleading requirements for a prison retaliation claim, the
       Ninth Circuit has suggested that allegations of either a chilling effect on First Amendment rights
24     or more than minimal harm "would suffice, since harm that is more than minimal will almost
       always have a chilling effect.  Alleging harm *and* alleging the chilling effect would seem under
25     the circumstances to be no more than a nicety."  Rhodes, 408 F.3d at 567 n.11 and 569 (holding
       that a plaintiff need not demonstrate that his First Amendment protected activity was "actually
26     inhibited or suppressed" if the defendant's actions "would chill or silence a person of ordinary
       firmness from future First Amendment activities.")

1 and fourth, whether defendant's actions advanced "'legitimate goals of the correctional

2 institution.'" Watison v. Carter, 668 F.3d 1108, 1115 (9th Cir. 2012) (quoting Rizzo v. Dawson,

3 778 F.2d 527, 532 (9th Cir. 1985).

4        Resolution of all four questions turns on defendant's motivation for taking her

5 actions and whether those actions served a legitimate correctional goal.  If defendant Hamad's

6 acts did advance a legitimate correctional goal, plaintiff has no constitutional protection against

7 placement transfer to a different prison facility.  See Meachum v. Fano, 427 U.S. 215, 225-27

8 (1976) (prisoners have no protected liberty interest in being housed at a particular prison).  On

9 the other hand, "an inmate may not be transferred to a new prison in retaliation for exercising his

10 or her First Amendment rights."  Vignolo v. Miller, 120 F.3d 1075, 1077-78 (9th Cir. 1997).  See

11 also Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995); Rizzo v. Dawson, 778 F.2d 527, 531

12 (9th Cir. 1985).  For the reasons set forth below, disputed issues of fact preclude the granting of

13 summary judgment in favor of defendant Hamad on those questions.

14        Defendant contends that her acts were motivated by a threat to her safety that she

15 "reasonably perceived" from what she had been told by the Deputy Attorney General who

16 represented her and from plaintiff's conduct at the trial of Case No. 2:03-cv-0466.  Plaintiff

17 denies that he made the statements attributed to him either during settlement conference

18 discussions or at trial, and he disputes that he acted at trial in the manner described by defendant

19 Hamad.  The facts presented by the parties give rise to two distinct possibilities:  (1) that

20 defendant Hamad was substantially motivated by the fact that plaintiff had pursued his civil

21 rights action against her all the way to trial or (2) that defendant Hamad was threatened by

22 statements made by plaintiff at the settlement conference, as reported to her by her attorney, and

23 by plaintiff's conduct in court during the trial.  Defendant Hamad's motivation for taking the

24 actions she took is central to the question of whether those actions served a legitimate

25 correctional goal, and to resolution of plaintiff's retaliation claim.  The factual disputes described

26 above make defendant Hamad's motivation for her actions a disputed issue of fact that cannot be

1    resolved absent a trial and precludes the granting of summary judgment.  Ford v. City of Yakima,

2    706 F.3d 1188, (9th Cir. 2013) (reversing grant of summary judgment in favor of defendants with

3    respect to plaintiff's First Amendment retaliation claim in part because the plaintiff had come

4    forward with sufficient evidence from which a jury could find that the police officer acted with a

5    retaliatory motive);  Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112 (9th Cir. 2011)

6    ("Summary judgment should be used prudently in . . . cases involving motivation and intent.")

7    (quoting Coleman v. Quaker Oats Co., 232 F.3d 1271, 1282 (9th Cir. 2000)); Davis v. City of

8    Las Vegas, 478 F.3d 1048, 1060 (9th Cir. 2007) ("Whether Officer Miller's actions were in bad

9    faith is a determination that may not be made at summary judgment, at least not where, as here,

10   there are contested issues of material fact with respect to Officer Miller's conduct and his

11   motivation.")

12          Defendant Hamad also contends that she is entitled to qualified immunity.  "The

13   doctrine of qualified immunity protects government officials 'from liability for civil damages

14   insofar as their conduct does not violate clearly established statutory or constitutional rights of

15   which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009)

16   (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

17   Resolving the defense of qualified immunity involves a two-step process:  the court must decide

18   1) whether the plaintiff has alleged or shown a violation of a constitutional right; and 2) whether

19   the right at issue was clearly established at the time of defendant's alleged misconduct.[7]

20   "Qualified immunity is applicable unless the official's conduct violated a clearly established

21   constitutional right."  Id. at 815-16.

22          The same disputes of material fact that preclude summary judgment on the merits

23   of plaintiff's retaliation claim also preclude a finding that defendant Hamad is entitled to

24   qualified immunity.  The version of events described by plaintiff's evidence could, if believed by

25

26          [7] After the decision in Pearson, courts are no longer required to address both steps in this
     order.  See Pearson, 555 U.S. at 811.

1    the finder of fact, establish that defendant Hamad retaliated against plaintiff.  Of course, the right

2    to freedom from retaliation was clearly established at the time of the conduct complained of in

3    this action.  See Pratt, 65 F.3d at 806 ("[W]e recently recognized that the prohibition against

4    retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity

5    purposes.")  Therefore, defendant Hamad is not entitled to summary judgment in her favor based

6    on qualified immunity grounds.

7                             CONCLUSION

8         In accordance with the above, IT IS HEREBY ORDERED that the findings and

9    recommendations filed March 13, 2013 are vacated; and

10         IT IS HEREBY RECOMMENDED that:

11         1.  Defendant Hamad's August 16, 2012 motion for summary judgment (ECF No.

12    47) be denied; and

13         2.  This matter be referred back to the undersigned for further pretrial proceedings.

14         These findings and recommendations are submitted to the United States District

15    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

16    days after being served with these findings and recommendations, any party may file written

17    objections with the court and serve a copy on all parties.  Such a document should be captioned

18    "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

19    objections shall be filed and served within fourteen days after service of the objections.  The

20    parties are advised that failure to file objections within the specified time may waive the right to

21    appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

22    DATED: August 21, 2013.

23

24                            _Dale A. Drozd_

25    DAD:12                  DALE A. DROZD

     mart10cv0189.msj        UNITED STATES MAGISTRATE JUDGE

26